**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00732-RM-NYW

DAVID LEE BURKHART, a/k/a LACY LEE BURKHART,

     Plaintiff,

v.

FLOREZ, in his official and individual capacities;
MOORE, in her official and individual capacities; and
YVETTE BROWN, in her official capacity,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Defendants Florez, Moore, and Yvette Brown's ("Defendant Brown" and collectively with Defendants Florez and Moore, "Defendants") Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") [#33, filed August 26, 2020]; and Defendant Brown's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies ("Motion for Summary Judgment") [#40, filed September 10, 2020]. The presiding judge, the Honorable Raymond P. Moore, referred the instant Motions to the undersigned pursuant to 28 U.S.C. § 636(b), the Order Referring Case filed July 29, 2020 [#22], and Memoranda dated August 27, 2020 [#35] and September 14, 2020 [#42], respectively. Having reviewed the Motions and associated briefing [#36; #39; #41; #43; #44; #48; #52], the applicable case law, and being otherwise advised of the premises, I respectfully **RECOMMEND** that the Motion for Summary Judgment be **GRANTED IN PART and DENIED IN PART** and the Motion to Dismiss be **GRANTED**.

## BACKGROUND

Believing Defendants violated her constitutional and statutory rights with respect to certain conditions of her confinement, Plaintiff initiated this action by filing her *pro se* Prisoner Complaint on March 16, 2020.[1]  *See generally* [#1].  Two days later, in light of deficiencies in Plaintiff's Complaint set forth in his [#5] Order, the Honorable Gordon P. Gallagher directed Plaintiff to file an Amended Complaint.  Plaintiff filed her Amended Complaint on April 13, 2020, and it remains the operative pleading in this case. *See* [#6].  The factual allegations in this Background section are drawn from the Amended Complaint.

For at least the better part of 2020,[2] Plaintiff David Lee Burkhart, a/k/a Lacy Lee Burkhart ("Plaintiff" or "Ms. Burkhart") was incarcerated at Fremont Correctional Facility ("FCF") in Canon City, Colorado, in the custody of the Colorado Department of Corrections ("CDOC"). [#6 at 2].  Ms. Burkhart contends that she was born a male but identifies as a female.[3]  [*Id.* at 2]. In 2017, she legally changed her name from David to Lacy. [*Id.*].  Plaintiff alleges that, in January 2020, she listed her husband and mother-in-law on her Offender Phone List form.  [*Id.* at 6, 11]. Defendant Florez, Plaintiff's case manager, denied her listed contacts because Plaintiff's husband is on parole.  [*Id.* at 6, 11–12].  Pursuant to CDOC Administrative Regulation (or "AR") 850-12,

---

[1] Because Ms. Burkhart proceeds *pro se*, this court affords her papers and filings a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But the court cannot and does not act as her advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[2] *See* [#54 (Notice of Change of Address/Contact Information), filed November 27, 2020; #55 (mail sent to Ms. Burkhart at her FCF address on November 27, 2020 was returned undeliverable), filed December 15, 2020].

[3] Because Plaintiff self-identifies as a transgender female, this court uses female-specific pronouns and honorific to refer to Plaintiff. *See Farmer v. Perrill*, 275 F.3d 958, 959 n.1 (10th Cir. 2001).

"inappropriate contacts" for prisoners may include "[p]ersons on active parole." [*Id.*].  Plaintiff contends that Defendant Florez intentionally prohibited her from contact with her husband and knew that Plaintiff would suffer from a mental breakdown as a result of this prohibition. [*Id.* at 11].

In addition, Plaintiff alleges that Defendant Florez's supervisor, Defendant Moore, initially authorized Plaintiff's husband to be included on her phone list.  [*Id.* at 17].  Following a February 2020 meeting between Defendants Florez and Moore and Plaintiff, Defendant Moore then permitted Defendant Florez to deny Plaintiff contact with her husband. [*Id.*].  In so doing, asserts Plaintiff, Defendant Moore failed to properly inform Defendant Florez that denying Plaintiff communication with her husband could cause Plaintiff to suffer mental health issues and resulting physical harm. [*Id.* at 11–12].  Plaintiff further contends that she raised the issue of her contacts with Warden Siobhan Burtlow ("Warden Burtlow").  [*Id.* at 7].  In Claim I against Defendant Florez, Defendant Moore, and Warden Burtlow, Ms. Burkhart alleges that these actions violated her Eighth Amendment rights. [*Id.* at 9].  In Claim II against Defendant Florez, Defendant Moore, and Warden Burtlow, Plaintiff alleges that these actions violated her Fourteenth Amendment substantive due process rights.  [*Id.* at 15].  In Claim III against Defendant Florez, Defendant Moore, and Warden Burtlow, Plaintiff alleges that these actions violated her First Amendment rights.  [*Id.* at 19].

Plaintiff also alleges Defendant Brown, the Legal Assistant at FCF where Plaintiff is incarcerated, violated her rights. [*Id.* at 8].  Specifically, Plaintiff alleges that on March 5, 2020, Defendant Brown informed her that pursuant to AR 850-07, the CDOC would not recognize Plaintiff's new legal name—Lacy Lee Burkhart—and would instead refer to her as David. [*Id.*].  On the following day, Plaintiff filed a grievance regarding Defendant Brown's refusal to allow

3

Ms. Burkhart to use her legal name and the resulting denial of law library access.  [*Id.*].  Defendant

Brown later clarified to Plaintiff that the relevant CDOC regulation required use of Plaintiff's

commitment name on CDOC documents but permitted use of Plaintiff's new legal name as an

alias after her commitment name. [*Id.*].  Plaintiff also alleges that Defendant Brown has refused to

recognize Plaintiff by her preferred pronouns, instead referring to Plaintiff using male pronouns

such as "he" and "his" in violation of CDOC AR 700-14(IV)(B), which states:

> Intentional misuse of gender pronouns and titles with transgender or intersex
> offenders is prohibited. Transgender and intersex offenders will be referred to by
> their preferred pronoun or as offender and their last name or by last name only.
> Unprofessional and derogatory references toward offenders is not allowed under
> any circumstances.

[*Id.* at 8–9].  These various claims against Defendant Brown.  Brown appear in a single,

amalgamated Claim IV[4] entitled "Retaliation." [*Id.* at 22–23].  Plaintiff brought each of these

causes of action against Defendants and Warden Burtlow in their individual and official capacities,

seeking monetary and injunctive relief.[5]  *See generally* [#6].

On May 1, 2020, Judge Gallagher issued a Recommendation with respect to Ms. Burkhart's

Amended Complaint.  *See* [#9].  The Honorable Lewis T. Babcock accepted and adopted Judge

Gallagher's Recommendation in its entirety, ordering that "(1) the First and Fourteenth

Amendment claims asserted against Defendants Florez and Moore based on the Defendants'

actions in barring Plaintiff from communicating with her husband and her husband's mother, (2)

---

[4] For purposes of clarity, this court refers to Plaintiff's alleged violations of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-601 *et seq.*; and Article II, Section 29 of the Colorado Constitution as "Claim IV-A."  [*Id.* at 22].  Claim IV also includes a retaliation claim arising under the First Amendment that this court refers to as "Claim IV-B." [*Id.* at 22–23].

[5] As Judge Gallagher previously noted, *see* [#14 at 4 n.5], while the caption of the Amended Complaint states that Plaintiff is suing Defendant Brown in her official capacity only, the body of the pleading indicates that Defendant Brown is being sued in both her official and individual capacities. *See* [#6 at 6].

the unconstitutional retaliation claim asserted against Defendant Brown, and (3) the state constitutional and statutory claims asserted against Defendant Brown, be drawn to a presiding judge and, if applicable, to a magistrate judge, pursuant to D.C.COLO.LCivR. 40.1(a)." [#10 at 2]. In his Order to Dismiss in Part and Drawing the Case, Judge Babcock specifically found that "any federal constitutional claims premised on Defendant Brown's refusal to recognize Plaintiff's legal name change in Colorado Department of Corrections' documents as other than an alias" was not viable pursuant to Rule 8 of the Federal Rules of Civil Procedure.  [*Id.*].  Thus, the following claims remain:  Claims II and III, in which Plaintiff alleges that Defendants Florez and Moore violated her right to familial association under the Fourteenth and First Amendments based on their interference with Plaintiff's ability to communicate with her husband, in both their individual and official capacities; and Claim IV brought against Defendant Brown in her individual and official capacities, arising from the alleged requirement of using her commitment name, "David," on any Legal Access Request Forms and Defendant Brown's misuse of appropriate pronouns to refer to Plaintiff.  Ms. Burkhart's remaining demand for relief is as follows:  (1) as to the remaining Claims II, III, and IV, $450,000 per day against each of the remaining Defendants Florez, Moore, and Brown in their individual capacities; (2) as to Claims II and III directed at Defendants Florez and Moore, injunctive relief as to restoration of her phone list to have full contact with her husband and mother-in-law, regardless of what status they may have in the Colorado criminal justice system, an order requiring the CDOC Administrative Regulations to be revised to allow contact between spouses regardless of parole status, and permission to receive mail from her husband at FCF; and (3) as to Claim IV asserted against Defendant Brown, injunctive relief in the form of an order compelling her to "comply with all State Statutes and allow the Plaintiff to list her name as

Lacy to all Documents" and that any other offender be permitted to use their legally changed named on any and all forms within the CDOC.  [*Id.* at 6].

On August 26, 2020, the Defendants filed their Motion to Dismiss, arguing that they are entitled to qualified immunity on Plaintiff's constitutional claims, i.e., Claims II, III, and IV-B. [#33]. Further, because Defendants argue for dismissal of each of Plaintiff's constitutional claims under Federal Rule of Civil Procedure 12(b)(6), Defendants ask the court to exercise its discretion under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction over Ms. Burkhart's state law claims reflected in Claim IV-A. [*Id.* at 3].  Two weeks later, Defendant Brown filed the instant Motion for Summary Judgment, arguing that Plaintiff failed to exhaust her administrative remedies as to the entirety of Claim IV. [#40].  The Motion to Dismiss [#36, #39, #48][6] and Motion for Summary Judgment [#44, #52] are fully briefed and ripe for Recommendation.  In the interim, Ms. Burkhart was released to parole on November 23, 2020.  [#54].

## ANALYSIS

## I.    Subject Matter Jurisdiction

Defendants do not argue for dismissal for lack of subject matter jurisdiction in either Motion, as Ms. Burkhart was not released to parole until after the completion of briefing.  *See generally* [#33, #40].  But federal courts are courts of limited jurisdiction and under Article III of

---

[6] Plaintiff filed both a Response to the Motion to Dismiss [#39] as well as a "Supplemental Response to Defendant's Answer" [#36].  Though the title of the document refers to Defendants' Answer, it refers to [#33], the Motion to Dismiss.  Because Ms. Burkhart proceeds pro se, this court liberally construed both filings in the aggregate as responding to the Motion to Dismiss, and directed Defendants to reply to arguments in both [#36] and [#39].  [#45].  Plaintiff also filed a "Final Reply to Oppose Defendants Motion to Dismiss" ("Final Reply") [#53, filed November 4, 2020] in response to Defendants' Reply to their Motion to Dismiss [#48].  But neither the Federal Rules of Civil Procedure nor this District's Local Rules of Practice allows for sur-replies, and Ms. Burkhart neither sought nor obtained leave from the court to file such a sur-reply.  Accordingly, this court declines to consider the Final Reply in this Recommendation.

the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)). Thus, this court raises the jurisdictional issue *sua sponte*, as it cannot proceed to considering substantive issues if it does not have subject matter jurisdiction. *See Colo. Outfitters Ass'n v. Hickenlooper ("Colorado Outfitters II")*, 823 F.3d 537, 544 (10th Cir. 2016) (observing that a federal court cannot assume subject matter jurisdiction because, if none exists, it "may go no further").

### A.     Legal Standard

Article III of the Constitution limits the jurisdiction of federal courts to considering only actual cases or controversies. *Kan. Jud. Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997)). The paradigmatic inquiry is "whether granting a present determination of the issues offered will have some effect in the real world," or whether it is now impossible for a court to grant effective relief. *Id.* (citing *Kan. Jud. Review*, 562 F.3d at 1246). *See also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011) (holding a claim for injunctive relief is moot when (1) the issues presented are no longer "live," or (2) the parties lack a legally cognizable interest in the

outcome). With respect to a request for injunctive relief, the plaintiff's "susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)). "Constitutional mootness is grounded in the requirement that 'any case or dispute that is presented to a federal court be definite, concrete, and *amenable to specific relief*.'" *Id.* (quoting 15 James W. Moore & Martin H. Redish, *Moore's Federal Practice* § 101.90, at 101–237 (3d ed. 2010)). Mootness implicates subject matter jurisdiction, and a court lacking jurisdiction "must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 908 (10th Cir. 1974) (emphasis added).

### B.    Application

Here, in Claims II and III, Ms. Burkhart alleges that Defendants Florez and Moore have violated her Fourteenth and First Amendment rights of familial association by denying her contact with her spouse and mother-in-law while incarcerated at FCF. *See* [#6 at 19]. As part of her relief, Plaintiff seeks injunctive relief in the form of a court order mandating that (1) her Offender Phone List be "restored" and that she be granted full contact with her spouse and mother-in-law notwithstanding her spouse's parolee status; (2) the CDOC's Administrative Regulations applicable to phone use be revised to permit married offenders like Plaintiff to contact their spouses, even if the spouse is on parole; and (3) mail correspondence between she and her spouse be permitted to pass through FCF.  [*Id.*].

In Claim IV, asserted against Defendant Brown only, Plaintiff claims that Defendant Brown violated federal and state law when she allegedly discriminated against Plaintiff regarding

her use of her legal name on CDOC documents, and retaliated against Plaintiff by using the incorrect pronouns when addressing Ms. Burkhart.  [*Id.* at 8, 22–23].  Plaintiff seeks injunctive relief in the form of a court order mandating that Defendant Brown comply with state statutes and permit Plaintiff to list her name as "Lacy to all documents that come in front of her desk," and a more general court order requiring the CDOC to permit any offender with a legally-changed name to use their "new" name on "any and all forms," [*id.* at 25–26 ¶ 2].

But the injunctive relief sought by Plaintiff through Claims II, III, and IV are moot, given her release to parole in November 2020.[7]  *See* [#54].  For example, a court order mandating that Plaintiff's spouse and mother-in-law be added to her Offender Phone List at FCF would have no real world effect if Plaintiff is no longer subject to phone call restrictions at FCF.  *See Abdhulsaheeb*, 600 F.3d at 1311.  Similarly, an order requiring FCF to permit mail correspondence between Plaintiff and her spouse to pass through the facility would be meaningless if Plaintiff was no longer sending from or receiving mail at FCF.  And finally, Plaintiff alleges that Defendant Brown is the Legal Assistant at FCF—so an order requiring Defendant Brown to permit Ms. Burkhart to use "Lacy" on forms "that come in front of [Defendant Brown's] desk," would be of no consequence outside of FCF.  Insofar as Plaintiff also seeks injunctive relief in the form of a revision to CDOC inmate policies, Plaintiff can no longer "demonstrate a personal stake in the outcome," *Faustin v. Denver*, 268 F.3d 942, 947 (10th Cir. 2001) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983))—because Plaintiff is no longer subject to policies applicable to inmates (as opposed to parolees).[8]  *See McAlpine v. Thompson*, 187 F.3d

---

[7] The court has wide discretion to consider extrinsic evidence to resolve questions of jurisdictional facts under Rule 12(b)(1).  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

[8] An exception to the application of the mootness doctrine is when a plaintiff brings a lawsuit challenging policies that are applied in a generally uniform fashion throughout the prison system. *Jordan v. Sosa*, 654 F.3d 1012, 1028 (10th Cir. 2011).  To avoid mootness, the inmate's claim must

1213, 1218 (10th Cir. 1999) (holding that a release to parole moots a claim regarding prison conditions and regulations as opposed to parole procedures or conditions and regulations that affect parole).

As such, this court concludes that Claims II, III, and IV, insofar as the claims are asserted against each Defendant in his or her official capacity for prospective injunctive relief are moot, and thus, this court respectfully **RECOMMENDS** that they be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

## II.    Motion for Summary Judgment

The court next considers whether Ms. Burkhart is precluded from pursuing Claim IV based on a failure to exhaust administrative remedies.  Recognizing that a prisoner's failure to exhaust administrative remedies is an affirmative defense that cannot typically be resolved by simply looking within the four corners of the operative pleading, *see Jones v. Bock*, 549 U.S. 199, 216 (2007); *Toevs v. Quinn*, No. 15-CV-02838-RBJ, 2017 WL 1055314, at *3 (D. Colo. Mar. 21, 2017), Defendant Brown moves for summary judgment.  [#40].

### A.    Legal Standards

#### 1.    Rule 56

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier

---

both challenge a system-wide policy <u>and</u> must name the appropriate defendants that can effectuate effective injunctive and declaratory relief. *Id*.  But as discussed above, Ms. Burkhart is no longer incarcerated at any CDOC facility and, in any case, did not sue the Executive Director of the CDOC in his official capacity or allege Defendants Moore, Florez, or Brown had authority to promulgate or revise CDOC policy generally or even at FCF.  *See id.* (citing *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1312 (10th Cir. 2010)).  Thus, this court finds that this exception does not apply to Ms. Burkhart's official capacity claims.

of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy her burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

### 2.   Statutory Framework for Exhaustion of Administrative Remedies

***PLRA.***   The Prison Litigation Reform Act ("PLRA") commands: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Any prisoner who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life must first exhaust the administrative remedies available to him in prison." *May v. Segovia*, 929 F.3d 1223, 1226–27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal citations omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

But the PLRA makes explicit that a prisoner must exhaust only <u>available</u> administrative remedies. 42 U.S.C. § 1997e(a). An available remedy is one "capable of use for the accomplishment of a purpose." *See Booth v. Churner*, 532 U.S. 731, 737 (2001). For purposes of PLRA exhaustion, an administrative remedy is <u>unavailable</u> "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011), or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250. Indeed, "courts [] are obligated to ensure that any defects in exhaustion were not procured from the action

or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). If Defendant Brown demonstrates that Ms. Burkhart did not exhaust her administrative remedies, the onus is on Ms. Burkhart "to show that remedies were unavailable to [her]." *May*, 929 F.3d at 1234 (internal quotation marks omitted).

> **B.      Undisputed Material Facts**

The court draws the following undisputed material facts from the record before it.

1.      At all times relevant, Plaintiff was an inmate in CDOC custody and incarcerated at the CDOC's FCF in Canon City, Colorado. [#44 at 8, ¶ 1].

2.      The CDOC's administrative procedure for inmate grievances is set forth in Administrative Regulation (AR) 850-04, which provides a three-step grievance procedure for CDOC inmates. [#40-1 at 1 ¶ 3; #40-2].

3.      An inmate initiates the grievance process by filing a Step 1 grievance form. [#40-1 at 1 ¶ 4; #40-2].

4.      If an inmate is not satisfied with the result of his or her Step 1 grievance, the inmate can proceed by filing a Step 2 grievance. [#40-1 at 1 ¶ 4; #40-2].

5.      If an inmate is not satisfied with the result of his or her Step 2 grievance, the inmate can proceed by filing a Step 3 grievance. [#40-1 at 1 ¶ 4; #40-2].

6.      A Step 3 grievance is the final stage of the CDOC's administrative procedure for inmate grievances. [#40-1 at ¶ 5; #40-2].

7.      Pursuant to CDOC AR 850-04(IV)(E)(3)(c)(2), a grievance officer may deny a grievance on procedural grounds which include, *inter alia*, failure to timely file grievances and/or adhere to the requirements set forth in the Administrative Regulations. [#40-1 at 2 ¶¶ 8–9; #40-2].

8.      If a grievance is denied on procedural grounds, the inmate has not exhausted the grievance process with respect to the allegations made in the denied grievance. [#40-1 at 2 ¶ 9; #40-2].

9.      Grievance Officer Anthony DeCesaro ("Officer DeCesaro") investigates and answers inmate grievances on behalf of the CDOC. [#40-1 at 1 ¶¶ 1–2].

10.     Officer DeCesaro reviewed the CDOC's records of grievances submitted by Ms. Burkhart to determine what administrative remedies Ms. Burkhart pursued with respect to the allegations set forth in Claim IV. [#40-1 at 2–3 ¶ 10].

11.     Ms. Burkhart filed a Step 1 Grievance regarding her claim to be entitled to use her new, female name on CDOC forms, rather than her commitment name, on March 5, 2020 ("Grievance #00167862"). [#40-1 at 3 ¶ 12; #40-4; #44 at 2 ¶ 3; #44 at 10 ¶ 7].

12.     Ms. Burkhart's Step 1 Grievance was subsequently denied on March 17, 2020. [#40-1 at 3 ¶ 12; #40-4].

13.     The following day, Ms. Burkhart filed a Step 2 Grievance regarding her claim to be entitled to use her new, female name on CDOC forms. [#40-1 at 3 ¶ 12; #40-4; #44 at 2 ¶ 3; #44 at 10 ¶ 7].

14.     Ms. Burkhart's Step 2 Grievance was denied on May 4, 2020. [#40-1 at 3 ¶ 12].

15.     Pursuant to AR 850-04(IV)(F)(1)(d), Ms. Burkhart was required to file a Step 3 Grievance within five calendar days of her receipt of the Step 2 Grievance denial. [#40-1 at 2 ¶ 7; #40-2 at 7].

16.     On May 9, 2020, FCF was placed on modified operations in response to COVID-19 concerns. [#44 at 2 ¶ 4(a); #44 at 10 ¶ 7].

17.     Ms. Burkhart did not file a Step 3 grievance regarding the use of her female name on CDOC forms until May 10, 2020.  [#40-1 at 3 ¶ 13; #44 at 2 ¶ 3; #44 at 10 ¶ 7].

18.     The CDOC's response to, and final administrative action regarding, Ms. Burkhart's Step 3 Grievance for Grievance #00167862 states: "The time constraints outlined in AR # 850-04 are now expired regarding these events, so there will be no further review of this matter. You failed to follow the grievance procedure in this matter, you have not exhausted your administrative remedies." [#40-1 at 3–4 ¶ 12; #40-4 at 3].

19.     Ms. Burkhart signed an acknowledgement of receipt on the CDOC's final administrative action on Grievance #00167862. [#40-1 at 3–4 ¶ 12; #40-4 at 3].

20.     Officer DeCesaro found no grievances filed by Ms. Burkhart with respect to her claim that Defendant Brown refused to use Ms. Burkhart's preferred, female pronouns. [#40-1 at 4 ¶ 13].

## C.     Application

Failure to exhaust administrative remedies is an affirmative defense.  As set forth above, Defendant Brown bears the initial burden of establishing her prima facie case of Ms. Burkhart's failure to exhaust.  If Defendant Brown satisfies this requirement, the burden shifts to Ms. Burkhart to excuse her failure to comply with the procedures set forth in AR 850-04.

At the outset, I conclude for the reasons below that Defendant Brown's failure to exhaust affirmative defense asserted under the PLRA does not apply to the state law claims asserted in Claim IV-A, so any subsequent analysis in this section is limited to only Plaintiff's federal claim arising under the First Amendment against Defendant Brown, i.e., Claim IV-B.  In addition, given Judge Babcock's Order, this court interprets Claim IV-B as limited to the misuse of pronouns, but not including a cause of action arising under the First Amendment based on Defendant Brown's

15

refusal to recognize "Lacy Burkhart," and the resulting denial of Ms. Burkhart's access to the law library. *See* [#10 at 2]. Nonetheless, because I proceed by Recommendation, I include an alternative analysis with respect to the exhaustion of administrative remedies as to this second issue.

### 1.   The PLRA does not apply to Claim IV-A.

Defendant Brown identifies both federal and state causes of action asserted against her in Claim IV, *see* [#40 at 2–3 (listing one federal retaliation claim and two state law discrimination claims)], and states that her "Motion for Summary Judgment applies to each of those separate legal claims subsumed in Claim Four," [*id.* at 3]. As defined above, Claim IV-A reflects causes of action arising under either CADA or the Colorado constitution, and is not subject to the exhaustion requirements of the PLRA. *See Toevs v. Quinn*, No. 15-cv-02838-RBJ-NYW, 2017 WL 8942562, at *11 (D. Colo. Jan. 31, 2017) ("[T]he [state law] claim falls outside of the PLRA, which requires inmates to exhaust available remedies prior to filing an action under § 1983.") (collecting cases), *report and recommendation adopted in relevant part*, 2017 WL 1055314 (D. Colo. Mar. 21, 2017); *McDaniel v. Meisner*, 617 F. App'x 553, n.3 (7th Cir. 2015) ("We note that the exhaustion requirements of the Prison Litigation Reform Act do not apply to state-law claims."). Absent any argument from Defendant Brown to the contrary, this court respectfully **RECOMMENDS** that the Motion for Summary Judgment be **DENIED IN PART**, insofar as it seeks summary judgment on Claim IV-A for failure to exhaust administrative remedies.

### 2.   Ms. Burkhart failed to exhaust her administrative remedies with respect to Claim IV-B arising from the refusal to use appropriate pronouns.

***Plaintiff's Step 1 Grievance Was Untimely***. With respect to the use of Plaintiff's preferred pronouns, Defendant Brown avers that Ms. Burkhart failed to initiate, timely or otherwise, the first

of the requisite grievances within the applicable 30-day window. [#40 at 9]. Pursuant to AR 850-04(IV)(F)(1)(a), Ms. Burkhart was required to file a Step 1 Grievance no later than 30 days from the date she knew, or should have known, of the facts giving rise to her grievance. [#40-2]. *See also* [#40-1 at 2 ¶ 6]. But Ms. Burkhart never filed a Step 1 Grievance related to Defendant Brown's March 2020 refusal to use her preferred, female pronouns. [#40-1 at 4 ¶ 13]. According to the Declaration of the CDOC's custodian of records for Step 3 Grievances, there was no record of "any grievance addressing Ms. Brown's alleged failure to recognize Ms. Burkhart's preferred pronouns she and her," at least as of September 3, 2020. [*Id.*]. In other words, nearly six months after Defendant Brown's allegedly discriminatory conduct, Ms. Burkhart still failed to initiate the first step of the CDOC's grievance procedure and her opportunity to do so has long since passed. *Compare* [#6 at 8, 28] *with* [#40-1 at 4 ¶ 13]. *See also* AR 850-04(IV)(F)(1)(a). Accordingly, this court concludes that Plaintiff has failed to exhaust her administrative remedies in a timely manner as to Claim IV-B, insofar as it is premised on Defendant Brown's alleged failure to use female pronouns when addressing Plaintiff.

### Plaintiff Fails to Adduce Sufficient Evidence to Excuse Her Untimely Step 1 Grievance.

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has interpreted 42 U.S.C. § 1997e(a) to mean that if an administrative remedy is *not* available, an inmate cannot be required to exhaust it. *Tuckel*, 660 F.3d at 1252–53 (holding that an administrative remedy is unavailable when prison officials prohibit inmates from filing grievances through threats or intimidation of serious bodily harm). For purposes of the PLRA, an administrative remedy is available if it affords an inmate "the possibility of some relief for the action complained of," *Booth*, 532 U.S. at 738, and unavailable if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy," *Little*, 607 F.3d at 1250.

In *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), the United States Supreme Court outlined three situations in which failure to exhaust is excusable because an administrative remedy is not available to the inmate as required by the PLRA. Relevant here, a remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1861. Exhaustion is not required when "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures . . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.* at 1860. Nevertheless, an inmate faces a "high bar to show unavailability." *Williams v. Borrego*, No. 19-cv-00371-RBJ-MEH, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020).

In the Tenth Circuit, an inmate must make two showings in order to meet her "heightened burden" to show unavailability of administrative remedies. *See id.* (citing *May*, 929 F.3d at 1235; *Tuckel*, 660 F.3d at 1254). As the nonmoving party, Ms. Burkhart "must produce specific facts that show there is a genuine issue of fact as to whether (1) 'the threat, machination, or intimidation actually did deter [her] from lodging a grievance' and (2) 'the threat, machination, or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance.'" *May*, 929 F.3d at 1235 (quoting *Tuckel*, 660 F.3d at 1254) (internal brackets and alternations omitted).[9] The first element is subjective, while the second, objective element "ensures that

---

[9] The court notes that neither Party explicitly argues under the *Tuckel* framework. Nevertheless, Defendant Brown relies on cases that applied the two-part *Tuckel* test to award summary judgment on failure to exhaust affirmative defenses in a defendant's favor, *see, e.g.*, [#52 at 2 (citing *Kee v. Raemisch*, 793 F. App'x 726, 735–36 (10th Cir. 2019))], and Ms. Burkhart's Response implicitly argues that FCF staff prevented her from timely filing her Step 3 Grievance, *see* [#44 at 2 ("The Plaintiff in this matter filed her step three grievance on the next available day" because her "new case manager did not give her a grievance form as he was out of the them at the time," FCF was placed on modified operations on May 9, 2020 in response to COVID-19 concerns, and she "had to get a cell house staff member to print her one on Sunday, May 10, 2020.")]. This court affords

inmates cannot easily circumvent the exhaustion requirement, and provides district courts with a means of quickly filtering frivolous claims." *Tuckel*, 660 F.3d at 1254. Only conduct "sufficiently serious and . . . severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes." *Id.* Because Ms. Burkhart must demonstrate both elements to satisfy her heightened burden, my analysis here begins and ends with the subjective element of the inquiry.[10]

Other than an assertion that she "stated in her Affidavit . . . that as the two issues in regard to Defendant Brown was sent on her step one and step 2 and further in her step three grievance as per AR # 850-04(IV)(D)(6), 'problems that arise from the same incident or set of facts will be grieved in one grievance . . .'" [#44 at 2 ¶ 5], Ms. Burkhart offers no argument or evidence from which this court could conclude that a genuine dispute of material facts exists as to whether Ms. Burkhart filed a grievance related to Defendant Brown's refusal to use her preferred pronouns, let alone whether Ms. Burkhart's failure is excusable. Instead, Ms. Burkhart's affidavit makes clear that the Step 1 Grievance she filed on <u>March 5, 2020</u> (and the only grievance she references concerning Defendant Brown's conduct at any point), Grievance #00167862, could not possibly have included facts about Defendant Brown's <u>March 6, 2020</u> refusal to use female pronouns. *Compare* [#44 at 10 ¶ 6 ("On <u>March 6th, 2020</u> the affiant attended a law library session . . . . It was within that first fifteen minutes that the affiant was asked to leave the law library due to her using her legally changed name to 'Lacy'. The affiant asked Defendant Brown to call her 'she, her, hers'

---

Ms. Burkhart's filing a liberal construction and considers her arguments in light of applicable precedent.

[10] However, the court notes that Ms. Burkhart also fails to provide any evidence that suggests that a reasonable inmate in the same or similar circumstances would be deterred from pursuing an appeal. *See Walker v. Mazotti*, No. 16-cv-02221-RBJ-MEH, 2018 WL 4385288, at *4 (D. Colo. Sept. 14, 2018) (applying the *Tuckel* test and finding that the plaintiff inmate failed to demonstrate either element).

as she is a transwomen and Defendant Brown denied this stating 'you are a man in a man's prison, and I will not do that.'") (emphasis added)] *with* [*id.* at 10 ¶ 7 ("The affiant filed her step-1 grievance on <u>March 5, 2020</u>, stating the reasons for being kicked out of the law library.") (emphasis added)].  Given that the Plaintiff's arguments and proffered evidence in Response to the Motion for Summary Judgment concern only Grievance #00167862, this court finds that Ms. Burkhart thus fails to meet her burden to establish that the CDOC's administrative remedies were unavailable because "prison officials prevent[ed], thwart[ed], or hinder[ed]," her efforts to avail herself of the grievance process.  *See Little*, 607 F.3d at 1250.

Therefore, I conclude that there is no genuine dispute of fact as to the availability of Ms. Burkhart's administrative remedies and conclude, based on the undisputed material facts and evidence submitted in support of the instant Motion for Summary Judgment, that Ms. Burkhart failed to exhaust her administrative remedies as to Claim IV-B.  Accordingly, I conclude that her claim is barred. *See Boles v. Allen*, 784 F. App'x 596, 600 (10th Cir. 2019) (unpublished) ("Because the undisputed evidence in the record shows that Plaintiff did not follow the proper procedures to complete the administrative process, we affirm the district court's entry of summary judgment in favor of Defendants on Plaintiff's [§1983] claim."); *Williams v. Franklin*, 302 F. App'x 830, 833 (10th Cir. 2008) (unpublished) ("The reviewing authority denied the grievance as untimely under its grievance procedures. . . . [W]e agree that [the state prisoner plaintiff] is procedurally defaulted from asserting this claim.").

> **3.**     **In addition, Ms. Burkhart also failed to exhaust her administrative remedies as to her allegations arising from the use of the name "Lacy Burkhart" and exclusion from the law library.**

Though this court concludes that the PLRA does not apply to Claim IV-A and does not interpret Claim IV-B to include a retaliation claim based on Defendant Brown's refusal to

recognize the name "Lacy Burkhart" on law library Access Forms, this court considers whether Ms. Burkhart exhausted her administrative remedies as to this issue in case the presiding judge disagrees as to one or both premises.

*Scope of Retaliation Claim*. As an initial matter, it is unclear what the precise contours of Ms. Burkhart's retaliation claim are with respect to the refusal to use her legal name. In the pending Motion to Dismiss and Motion for Summary Judgment, Defendants characterize Plaintiff's retaliation claim as follows: "Ms. Burkhart claims that, after she filed a grievance challenging Ms. Brown's refusal to recognize her new legal name, Ms. Brown retaliated against her by denying Ms. Burkhart access to the prison law library." [#33 at 2; #40 at 2 (emphasis added)]. But in the substantive arguments and supporting declarations to Defendant Brown's Motion for Summary Judgment, at least Defendant Brown seems to argue the second theory. *See* [#40 at 8-9; #40-1 at 2 ¶ 10 (characterizing Plaintiff's claim as "improperly being denied access to the law library by Defendant Yvette Brown because Ms. Burkhart filled out the required Library Access forms using only her new legal name and not her commitment name.") (emphasis added)]. But nowhere in her Amended Complaint does Plaintiff aver that Defendant Brown denied her access to the law library in retaliation of Plaintiff's complaint made about the failure to use her legal, rather than commitment, name. [#6 at 22–23]. Instead, as reflected in her administrative grievance, it appears that Plaintiff alleges that Defendant Brown refused to recognize her legal name on her law library Access Forms, and as a consequence of Ms. Burkhart's use of "Lacy" rather than "David," refused to allow her access to the law library. [#40-4 at 1]. Indeed, in both her Step 1 and 2 Grievances, Ms. Burkhart complains of the denial of law library access concurrently with Defendant Brown's refusal to recognize her legal name, not sequentially after her complaints of Defendant Brown's actions. *See generally* [#40-4]. While this lack of precision

does not impact the outcome of this court's exhaustion analysis, it does—as discussed in detail below—affect the analysis as to whether Ms. Burkhart states a cognizable claim for retaliation.

 ***Plaintiff's Step 3 Grievance Was Untimely***.  Defendant Brown argues that Ms. Burkhart failed to timely file her Step 3 Grievance. [#40 at 8–9].  The undisputed material facts reveal that Ms. Burkhart, as a CDOC inmate, was subject to the CDOC's grievance procedures specified in AR 850-04, of which Ms. Burkhart was aware, and that she did not exhaust her administrative remedies in a timely manner.  Ms. Burkhart's complaints of Defendant Brown's refusal to recognize her legal name and her denial of access to the law library on March 5, 2020 is subject to, *inter alia*, the time limits set forth in AR 850-04(IV)(F), including requirements that a Step 1 grievance be filed no later than 30 calendar days from the date that the offender knew or should have known of the facts giving rise to the grievance, *see* AR 850-04(IV)(F)(1)(a), and subsequent steps in the grievance process be filed within five calendar days of an offender's receipt of a written response to the previous step, *see* AR 850-04(IV)(F)(1)(d).

 There is no dispute that Ms. Burkhart filed Step 1 and Step 2 Grievances regarding the use of her legal name rather than her commitment name on library Access Forms on March 5 and March 18, 2020, respectively. [#40-1 at 3 ¶ 12; #40-4 at 2–3; #44 at 10 ¶ 7].  It is also undisputed that Ms. Burkhart received the response to her Step 2 Grievance on May 4, 2020. [#40-1 at 3 ¶ 12; #40-4 at 2–3; #44 at 10 ¶ 7].  Pursuant to AR 850-04(IV)(F)(1)(d), Ms. Burkhart was required to file a Step 3 Grievance within five calendar days of the date on which she received an unsatisfactory response to her Step 2 Grievance—or in this case, by May 9, 2020.  [#40-1 at 2 ¶ 7; #40-2 at 7].  *See also* AR 850-04(IV)(F)(1)(d).  It is undisputed that Ms. Burkhart did not file her Step 3 Grievance on or before May 9, 2020. [#40-1 at 2 ¶ 12; #40-4 at 4; #44 at 10 ¶ 7].  Ultimately, her Step 3 Grievance was denied on procedural grounds for failure to follow the time limits set

forth in the CDOC's grievance procedures.   The written response to Ms. Burkhart's Step 3 Grievance states: "The time constraints outlined in AR 850-04 are now expired regarding these events, so there will be no further review of this matter. You failed to follow the grievance procedure in this matter, you have not exhausted your administrative remedies." [#40-1 at 3–4 ¶ 12; #40-4 at 4].

In sum, the undisputed evidence submitted by Defendant Brown shows that Ms. Burkhart failed to timely file her Step 3 Grievance on or before May 9, 2020.  Because Defendant Brown thus carried her burden of making a prima facie showing that Ms. Burkhart failed to comply with the CDOC's grievance procedures, the burden now shifts to Ms. Burkhart to provide admissible evidence that FCF officials prevented, thwarted, or hindered her ability to comply with the regulation by denying her the ability to timely file her grievance. *See Anderson*, 277 U.S. at 248 (explaining that the burden shifts to the nonmovant after the summary judgment movant makes a prima facie showing); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (stating that the nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence).

***Plaintiff Fails to Adduce Sufficient Facts to Excuse Her Lack of Exhaustion.***   In Response to the Motion for Summary Judgment, Ms. Burkhart counters that she has exhausted all opportunities for administrative remedies available to her, and that any failure to exhaust was caused by FCF staff misconduct. [#44].  Specifically, Ms. Burkhart avers that she was unable to timely file her Step 3 Grievance because she received the requisite form from an unidentified staff member on May 10, 2020, a day after her deadline to file a completed version of the same. [*Id.*].

Ms. Burkhart avers that, upon receipt of her Step 2 Grievance on May 4, 2020, she

> [w]as told at the time of her receipt of her Step-2 grievance by her newly assigned case manager (Case Manager McDonald) that he did not have any grievances on

> hand, but he would send one as soon as he could get copies. On May 9th, 2020 the affiant did not get a copy of a grievance by her case manager, and as she was asking her housing unit staff to obtain the copy, the Facility called a modified lockdown. . . . The affiant than had a staff member from her unit get permission to get a grievance form on May 10th, 2020. The affiant filed this form on May 10th, 2020.

[#44 at 10 ¶ 7]. But as set forth in greater detail below, Ms. Burkhart's averment regarding alleged statements made by Case Manager McDonald is not competent summary judgment evidence. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence.").

To the extent Ms. Burkhart argues that she was unable to properly exhaust her administrative remedies due to interference by FCF staff, this court finds that Ms. Burkhart has failed to meet her burden. Ms. Burkhart has not set forth any evidence from which a factfinder could reasonably conclude that a prison official was the cause of her untimely grievance.[11] Ms. Burkhart simply offers no factual allegations, other than inadmissible hearsay, to support a conclusion that a prison official interfered with her ability to timely obtain and submit a Step 3 Grievance. *See May*, 929 F.3d at 1235.

---

[11] While this court recognizes, and in no way discounts, the potential asymmetry of information between the Parties and the potential challenges Ms. Burkhart faces in eliciting evidence to support her assertions, bald allegations cannot preclude summary judgment and this court cannot excuse Ms. Burkhart from the requirements of Rule 56. *See May v. Segovia*, No. 15-cv-00405-NYW, 2017 WL 5495798, at *7 (D. Colo. Nov. 16, 2017) (same), *aff'd*, 929 F.3d 1223 (10th Cir. 2019); *Fields v. Okla. State Pen.*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("[The plaintiff] claims only that he was hampered in exhausting his remedies and proving that he had exhausted, because he was denied access to and storage space for his legal materials. Bald allegations cannot preclude summary judgment."); *accord Wilson v. Bezona*, No. 10-CV-00756, REB-KLM, 2011 WL 7425472, at *6 (D. Colo. May 23, 2011) ("The conclusory assertions in Plaintiff's Response that he was not afforded any method of making copies is not competent summary judgment evidence. . . . The [Tenth Circuit] has clearly explained that an inmate plaintiff must put forth some evidence that prison officials interfered with his ability to properly exhaust his administrative remedies if he seeks to have his failure to exhaust excused.").

The record evidence demonstrates that Ms. Burkhart's "newly assigned case manager (Case Manager McDonald)," who Ms. Burkhart claims "told [her] at the time of her receipt of her Step-2 grievance . . . that he did not have any grievances on hand," and failed to provide her with a form on May 9, [#44 at 10 ¶ 7], was not assigned as Ms. Burkhart's Case Manager until June 2020, [#52-1 at 2–3 ¶¶ 13–14; #52-2 at 2]. Ms. Burkhart's version of events is belied by receipt signatures on the Step 2 and Step 3 Grievances; contemporaneously generated ChronLogs; and the Declaration of Defendant Florez, who served as Ms. Burkhart's Case Manager on the dates in question. [#52-1 at 2–3 ¶¶ 13–14; #52-2]. This foregoing record evidence is undisputed and competent for summary judgment purposes. Ms. Burkhart's Case Manager during the relevant time period was Defendant Florez, whose signature acknowledging receipt appears on both the Step 2 and Step 3 Grievances. *See also* [#52-1 at 2–3 ¶¶ 13–14; #52-2]. Moreover, Defendant Florez avers that he provided Ms. Burkhart with both the response to her Step 2 Grievance and a Step 3 Grievance form on the same day—May 4, 2020. [#52-1 at 2 ¶ 12].

While "a prisoner lacks 'available' remedies where prison officials deny him or her the necessary grievance forms," *Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004), this does not appear to be the case here. Even accepting her remaining assertions as true, Ms. Burkhart does not contend that she attempted to file a Step 3 Grievance form on May 9, 2020, but that such an attempt was thwarted. *See generally* [#44]. Indeed, the fact that Ms. Burkhart did not receive a Step 3 Grievance form on May 9, 2020 (the day she was required to file it), and received a grievance form from an unidentified staff member on May 10, 2020 and filed her Step 3 Grievance that same day, is not necessarily inconsistent with the record evidence that shows she was provided a Step 3 Grievance on May 4, 2020—the same day she received the response to her Step 2 Grievance—and did not file a Step 3 Grievance on or before May 9, 2020. *See* [#52-1 at 2–3 ¶¶

13–14; #52-2; #44 at 10 ¶ 7].  The record evidence shows that Ms. Burkhart received a Step 3 Grievance form on May 4, 2020.  [#52-1 at 2 ¶ 13; #52-2 at 2].  Ms. Burkhart fails to demonstrate that, notwithstanding her receipt of the requisite form on May 4, her receipt of another form and subsequent filing of the same on May 10 demonstrates that she was blocked from filing a timely Step 3 Grievance or otherwise excuses her failure to file a Step 3 Grievance by the May 9 deadline.

Ms. Burkhart thus fails to adduce sufficient facts to demonstrate a genuine issue of material fact that administrative remedies were unavailable to her.  *See May*, 929 F.3d at 1235 (holding that the plaintiff failed to offer any factual support for his allegation that prison officials prohibited him from filing grievances "beyond the allegation itself," which was insufficient to demonstrate his administrative remedies were unavailable). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment." *Fazio v. City & Cty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). *See also Martinez v. CDOC*, No. 19-cv-01245-PAB-NYW, 2020 WL 6119879, at *11–12 (D. Colo. June 4, 2020) (granting summary judgment where plaintiff failed to exhaust administrative remedies prior to bringing suit and failed to carry burden of demonstrating that those remedies were unavailable), *report and recommendation adopted*, 2020 WL 5525363 (D. Colo. Sept. 14, 2020).

Accordingly, this court respectfully **RECOMMENDS** that Defendant Brown's Motion for Summary Judgment be **GRANTED IN PART and DENIED IN PART,** and that summary judgment be entered in favor of Defendant Brown as to the <u>federal</u> cause of action in Claim IV, i.e., retaliation in violation of the First Amendment. [12]

---

[12] Typically, a conclusion that a plaintiff failed to exhaust his administrative remedies results in a dismissal without prejudice because "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw." *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212–13 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  Several courts in this District have held that a prerequisite to dismissal with prejudice is the prison

### III.    Motion to Dismiss

Finally, the court considers Defendants' Motion to Dismiss that seeks dismissal of Claims II, III, and IV in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Specifically, Defendants argue that Plaintiff fails to state a valid familial association claim under the Fourteenth (Claim II) or First (Claim III) Amendments, respectively; Claim IV-B fails to allege the requisite facts to permit the inference of retaliatory motive and Plaintiff cannot show that Defendant Brown's actions were borne from a retaliatory motive;[13] the court should decline to exercise supplemental jurisdiction over the state law claims subsumed in Claim IV-A; and Plaintiff's state law claims are inadequately pled in Claim IV-A.  *See generally* [#33]. Defendants also assert qualified immunity as to the federal claims (Claims II, III, and IV-B) asserted against them in their individual capacities.  [*Id.*].  Finally, because Defendants assert qualified immunity as a defense to all of Plaintiff's federal claims, Defendants seek dismissal of Plaintiff's state constitutional and statutory claims (Claim IV-B) pursuant to 28 U.S.C. §§ 1967(c)(1) and (3).  [*Id.*].

### A.    Legal Standard

---

authorities' rejection of a plaintiff's grievances as untimely. *See Van Houten v. Marlett*, 330 F. App'x 161, 163 (10th Cir. 2009) (unpublished) (affirming dismissal with prejudice of the plaintiff's unexhausted claims where prison administrators rejected grievances as untimely); *May*, 2017 WL 5495798, at *8 n.6 (collecting cases).  Here, prison administrators rejected Ms. Burkhart's grievances based on Defendant Brown's refusal to use Plaintiff's legal name on CDOC forms as untimely but did not as to Defendant Brown's refusal to address Ms. Burkhart by her preferred pronouns.  Because it is not clear how the presiding judge will interpret Claim IV-B given Judge Babcock's Order, this court reserves the issue of dismissal with or without prejudice to the presiding judge.

[13] Given that the instant Motions are before this court for Recommendation, I also consider the merits of Defendants' Rule 12(b)(6) arguments for dismissal of Claim IV-B, notwithstanding my recommendation that the Motion for Summary Judgment be granted. *See supra* pages 10–26.

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Okla.*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim, without converting the Rule 12(b)(6) motion into a summary

judgment motion, if the Parties' do not dispute their authenticity.  *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

**B.     Cognizable Constitutional Claims**

*Claim II:  Fourteenth Amendment Right to Familial Association.*  "[T]he familial right to association is properly based on the concept of liberty in the Fourteenth Amendment" and grounded in substantive due process. *See Griffin v. Strong*, 983 F.2d 1544, 1546–47 (10th Cir. 1993). *See also Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014) ("A familial association claim is grounded in 'substantive due process' arising from allegations of abusive government authority.") (citations omitted).

The right to familial association attaches to protected relationships including, *inter alia*, the parent-child relationship and the inmate-spouse relationship. *See, e.g.*, *Muniz-Savage v. Addison*, 647 F. App'x 899, 905-06 (10th Cir. 2016).  To state a claim for deprivation of the right to familial association, Ms. Burkhart must allege that (1) the Defendants intended to deprive her of her protected relationship with her husband, and (2) on balance, the Defendants either unduly burdened Ms. Burkhart's relationship with her husband or effected an "unwanted intrusion" into that relationship. *See Thomas*, 765 F.3d at 1196.

The United States Supreme Court has recognized that "[a]ccess [to prisons] is essential . . . to families and friends of prisoners who seek to sustain relationships with them." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  But it is also well established that "[t]he very object of imprisonment is confinement," and "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner," *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  "Prisoners do not retain rights inconsistent with proper incarceration, and 'freedom of association

is among the rights least compatible with incarceration.'" *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004) (quoting *Overton*, 539 U.S. at 131).

A balancing test applies to the second element of Plaintiff's Fourteenth Amendment claim, whereby the court balances the individual's liberty interest against the state's asserted reasons for restraining individual liberty—the purpose of which is "to ascertain whether a defendant's conduct constitutes an undue burden on the plaintiff's associational rights." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010) (citing *Griffin*, 983 F.3d at 1547). In the context of inmate visitation restrictions, the United States Supreme Court has recognized that courts "must afford substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132. And it is not the state's burden to prove the validity of its prison regulations. *Id.* Rather, the burden lies with the plaintiff prisoner to disprove the validity of the same. *Id.*

In this general context, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In *Turner*, the Supreme Court held that restrictions on inmate-to-inmate communications pass constitutional muster if the restrictions are reasonably related to legitimate and neutral governmental objectives. *Id.* at 89, 93. More specifically, when considering a prison's restrictions on access to family members, a court must "balance the guarantees of the Constitution with the legitimate concerns of prison administrators." *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir. 2002). And on a motion to dismiss, the court need only "assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir.

2012).  Thus, to state a cognizable claim, Ms. Burkhart must plead facts from which a plausible inference can be drawn that the Defendants' actions were not reasonably related to a legitimate penological interest. *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010).  This is not to say that Ms. Burkhart "must identify every potential legitimate interest and plead against it." *Al-Owhali*, 687 F.3d at 1240 (citation omitted).  But to survive Rule 12(b)(6) dismissal of her claims related to CDOC policy, she is required to "recite[] facts that might well be unnecessary in other contexts." *Id.* (quoting *Gee*, 627 F.3d at 1185).

Here, Defendants argue that Plaintiff fails to meet her burden under the rational basis test to allege facts sufficient to permit an inference that the CDOC's restriction of communications between inmates and parolees is unrelated to a legitimate penological interest. [#33 at 6 (citing *Gee*, 627 F.3d at 1188)].  Defendants argue that CDOC policy regarding communications between inmates and convicted felons (even those on parole) is a rational measure taken by prison administrators given that (a) the absence of such a policy might increase the likelihood that contraband would be sent or brought to prison facilities, and (b) the policy promotes efficient operation of the facility because allowing inmates to speak to parolees would require closer monitoring, thus draining the facility's resources.  [*Id.* at 6–7].

In other words, Defendants assert that the CDOC's restrictions on communications between inmates and parolees are reasonably related to the legitimate penological interests in institutional security and efficiency.  [*Id.* at 6].  As Defendants point out, the legitimacy of these penological concerns has been previously recognized by the Tenth Circuit.  *See, e.g.*, *Lewis v. Clark*, 663 F. App'x 697, 701 (10th Cir. 2016) (prison's ban on inmate-to-inmate correspondence was reasonably related to legitimate security concerns, notwithstanding the lack of an exception for inmate-to-inmate correspondence between family members); *Barney v. Pulsipher*, 143 F.3d

1299, 1313 n.17 (10th Cir. 1998) (recognizing the legitimacy of institutional efficiency as a penological objective).

Ms. Burkhart counters that AR 850-12 is unconstitutional because "as marriages are protected relationships, than disallowing contact between them is considered unconstitutional as an unwarranted intrusion into the Plaintiff's marriage." [#36 at 3 (citing *Cordova v. City of Albuquerque*, 816 F.3d 645, 654 (10th Cir. 2016))].  On Reply, Defendants characterize Plaintiff's conclusion as "vastly overbroad" and unsupported by *Cordova* for two reasons. [#48 at 4–5].  First, though conceding that *Cordova* is a familial association case, Defendants point out that it did not involve communications between spouses. [*Id.* (citing *Cordova*, 816 F.3d at 654)].  Second, Defendants argue that the question presented and decided in *Cordova* was not the constitutionality of a regulation but, instead, whether the plaintiff had stated a claim premised on police officers' alleged interference with his right to familial associations by preventing family members from visiting the plaintiff in the hospital. [*Id.* (citing *Cordova*, 816 F.3d at 654–56)].  According to Defendants, the Tenth Circuit held that the plaintiff failed to state a claim because he had not adequately alleged that "defendants had the 'intent to interfere' with a particular protected relationship." [*Id.* at 5 (quoting *Cordova*, 816 F.3d at 654–56 (further citations omitted))].

At the outset, this court notes that contrary to Defendants' argument, *Cordova* did not pass on whether the plaintiff's pleading was sufficient.  Rather, *Cordova* was decided on summary judgment—not on a motion to dismiss. *See, e.g.,* 816 F.3d at 655 ("[Plaintiff] has not <u>presented any evidence</u> demonstrating that the officers intended to interfere with his right to familial association."); *id.* ("We disagree that [the plaintiff] raises a <u>genuine issue of material fact</u> as to the officers' intent.); *id.* at 654, 656 (upholding district court's dismissal of the plaintiff's familial-association claim on summary judgment) (emphases added).  Nevertheless, on a motion to dismiss,

Ms. Burkhart must address Defendants' argument that "[i]f the CDOC let an inmate communicate with a parolee, it would need to more closely monitor such communications, which would drain the CDOC's resources," [#33 at 7 (citing *Simpson*, 879 F.3d at 280)]. Plaintiff is not required to substantively rebut the CDOC's justifications for AR 850-12. *See Gee*, 627 F.3d at 1188 ("We do not intend that pro se prisoners must plead, exhaustively, in the negative in order to state a claim."). She simply must plead some plausible facts supporting her claim that the ban on communicating with her spouse did not serve the asserted penological purposes of institutional security and/or institutional efficiency. *See Al-Owhali*, 687 F.3d at 1241 (citation omitted); *Gee*, 627 F.3d at 1185 (a prisoner must explain in his pleadings "why the usual justifications for the complained-of acts do not apply").

Plaintiff does not counter Defendants' arguments by pointing to factual allegations in the Amended Complaint which might suggest that Defendants Moore and Florez's enforcement of AR 850-12 was not reasonably related to Defendants' asserted interests in institutional efficiency or institutional security. *See generally* [#36, #39]. In addition, nothing in the Amended Complaint speaks to the rationale underlying AR 850-12. [#6]. Nor does the Amended Complaint include any allegations indicating that the CDOC lacks a legitimate penological interest in preventing contact between inmates and parolees (like Plaintiff and her spouse), or that restriction of such contact is unrelated to the CDOC's penological interest in institutional efficiency. [*Id.*].

The closest Plaintiff gets to meeting this standard is her allegation that because "all phone calls are recorded in all Colorado Prisons, to include Fremont Correctional Facility, any inappropriate conversations will result in COPD charges." [*Id.* at 14]. This assertion fails to plausibly support an inference that a communication ban between inmates and parolees does not serve the purpose of preserving CDOC resources. Indeed, the justification advanced by the

Defendants is the likelihood of the CDOC's need to "more closely monitor" inmate-to-parolee communications—not implement monitoring in the first instance. [#33 at 7 (emphasis added)]. Ms. Burkhart thus fails to include in her Amended Complaint "sufficient facts to indicate the plausibility that the actions of which [she] complains were not reasonably related to legitimate penological interests." *See Gee*, 627 F.3d at 1188 (emphasis in original).

      ***Procedural Due Process.*** Ms. Burkhart relies on *Wolff v. McDonnell*, 418 U.S. 539 (1974), in her Response to support her argument that AR 850-12 is unconstitutional because it does not afford inmates like Plaintiff an opportunity for a hearing concerning the CDOC's unilateral denials of inmate telephone contact with persons deemed "inappropriate contacts" [#36 at 3–4 (citing *Wolff*, 418 U.S. 539)]. To the extent Ms. Burkhart asserts a procedural due process claim under the Fourteenth Amendment, her claim fails as a matter of law. *See, e.g.*, *Hale v. Marques*, No. 19-cv-00752-WJM-SKC, 2020 WL 2309619, at *13 (D. Colo. Feb. 3, 2020) ("The Tenth Circuit has consistently found that a prisoner 'does not derive a liberty interest in visitation and telephone privileges from the Constitution.'") (quoting *Coleman v. Long*, 722 F. App'x 647, 649 (10th Cir. 2019)), *report and recommendation adopted in relevant part*, 2020 WL 1593339 (D. Colo. Mar. 30, 2020).

      Accordingly, this court concludes that Plaintiff fails to state a Fourteenth Amendment familial association claim and hereby respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Claim II.

      ***Claim III: First Amendment Right to Familial Association***. Although the Tenth Circuit has recognized a right to familial association under the First Amendment, *see, e.g.*, *Trujillo v. Bd. of Cty. Comm'rs*, 768 F.2d 1186, 1188–89 (10th Cir. 1985) (relying on First Amendment cases involving the freedom of expressive association as "the most appropriate analogy" in holding that

intent is an essential element of a § 1983 claim alleging deprivation of the right of familial association), cases since that time have expressed that "the familial right to association is properly based on the concept of liberty in the Fourteenth Amendment" and grounded in substantive due process. *See Griffin*, 983 F.2d at 1546–47. *See also Thomas*, 765 F.3d at 1196; *Muniz-Savage v. Addison*, 647 F. App'x 899, 905–06 (10th Cir. 2016) (same). *But see Wirsching v. Colo.,* 360 F.3d 1191, 1201 (10th Cir. 2004) (holding that defendants did not violate plaintiff's First and Fourteenth Amendment rights when denying visitation with child); *Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1359 (D. Colo. 2014) ("[T]he Court finds that Plaintiffs have stated a claim for a First and Fourteenth Amendment violation arising out of the restrictions imposed on their ability to associate with family members."). Thus, because the Tenth Circuit does not recognize a right to familial association under the First Amendment, Claim III fails to state a cognizable claim in its attempt to assert a § 1983 cause of action premised on an alleged violation of Plaintiff's First Amendment rights.[14] Accordingly, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with respect to Claim III.

  *Claim IV: Retaliation in Violation of the First Amendment.* As discussed above, Claim IV-B includes a § 1983 claim for retaliation in violation of the First Amendment. To state a § 1983 claim for unconstitutional retaliation in violation of the First Amendment, a plaintiff must allege facts to demonstrate that (1) she was engaged in constitutionally-protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's constitutionally protected activity. *See Shero v. City of*

---

[14] Even if there is a viable action for interference with familial relationships under the First Amendment, it appears the same standard (and analysis) would apply. *See Wirsching*, 360 F.3d at 1198–99 (applying the *Turner* framework).

*Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). An incarcerated plaintiff must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Gee*, 627 F.3d at 1191 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1991)). *See also Peterson v. Shanks*, 149 F.3d 1140, 1144–45 (10th Cir. 1998) ("We conclude that Peterson's allegations of retaliation must fail because he has presented no evidence that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions.").

Defendants argue that Plaintiff's retaliation claim must fail for two related reasons: (1) Plaintiff fails to alleges facts to support an inference that her grievance resulted in retaliation with the requisite specificity, and (2) Plaintiff cannot show that her March 5, 2020 grievance was the "but-for" cause of Defendant Brown's conduct. [#33 at 8]. This court respectfully agrees.

As discussed in detail above, it is unclear that Ms. Burkhart is even alleging that Defendant Brown denied library access due to her grievances regarding discriminatory conduct, rather than the failure to use her commitment name. *See supra* pages 21–22. Plaintiff does not cite, and this court did not independently find, any case law to suggest that the insistence of using a legal or gender-appropriate name was considered constitutionally-protected activity, as is required to state a First Amendment retaliation claim.[15] The Amended Complaint does not include any specific facts regarding Defendant Brown's alleged retaliation; the closest Plaintiff gets to pleading such support is an impermissibly vague, conclusory allegation that "Defendant Brown has been retaliating against the Plaintiff since March 5, 2020 by refusing legal access to the Plaintiff." *See* [#6 at 23]. Moreover, pursuant to AR 850-07, an inmate's commitment name must be listed on all official CDOC records. The official record may also include subsequently changed legal names

---

[15] Indeed, Judge Babcock's ruling suggests that there is no such cognizable constitutional right. [#10 at 2].

if preceded by an "AKA." *See* AR 850-07(IV)(A)(3) ("Legal name changes order by the court for an offender will be recorded in the official record as an AKA.").  The Amended Complaint alleges that Defendant Brown cited to this regulation in her March 5, 2020 memo to Ms. Burkhart.  *See* [#6 at 8 ¶ 6].  According to Exhibit 5 attached to the Amended Complaint, this memo states, "Effective 3/6/2020, if you choose to utilize the FCF Law Library you will be required to use your CDOC commitment name when completing and signing any Legal access AR forms. . . . You may review AR 850-07 regarding this policy." [*Id.* at 28].

This March 5, 2020 memo—stating Defendant Brown's understanding of AR 850-07 and explaining that any future attempts by Plaintiff to access the law library would require use of Plaintiff's commitment name on Legal Access AR forms—was the very basis of Plaintiff's March 5, 2020 grievance.  *See* [*id.* at 28 (Step 1 Grievance for Grievance #00167862, dated March 5, 2020) ("On a memo dated March 5, 2020, Yvette Brown stated that I cannot use my Legal name as Lacy."); *id.* (stating as "remedy" sought: "Allow my legally changed name on documents that are legal. Also allow me to not be refused Legal access due to my legal name change . . . .")].  Defendant Brown's second memo, sent on March 6, 2020, states, "For further clarification to memo I mailed to you previously dated 3/5/20, you may use your aka name after your commitment name on all Legal Access request forms and legal document drafted in CDOC Law Libraries. . . ." and includes citations to AR 850-04(IV)(A)(3) and (4).  *See* [*id.*].

Even if Plaintiff alleged specific facts regarding Defendant Brown's denial of her access to the law library after March 5, 2020, these allegations fail to support the inference that Defendant Brown's allegedly retaliatory motives were the "but for" cause of Defendant Brown's denial of law library access to Plaintiff absent inclusion of her commitment name on her Legal Access AR forms.  Indeed, if Plaintiff's allegations here were sufficient, any prisoner could state a First

Amendment retaliation claim when a prison official engages in a course of conduct (or even expresses an intent to so engage), the prisoner files a grievance related to that conduct, and the official does not immediately change course.[16]

Accordingly, to the extent that the presiding judge finds that summary judgment is not appropriate based on failure to exhaust and reaches the merits of this Motion to Dismiss, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's First Amendment retaliation claim, and Claim IV-B be **DISMISSED without prejudice**, insofar as it asserts a § 1983 claim premised on unconstitutional retaliation in violation of Plaintiff's First Amendment rights.

### C.   Qualified Immunity – Clearly Established

Defendants argue that, because Ms. Burkhart fails to state a claim for violation of her federal constitutional or statutory rights, she also fails to allege facts sufficient to establish the violation of a clearly-established constitutional right.  [#33 at 13–15].  Absent allegations to support violation of her constitutional rights, argue Defendants, Ms. Burkhart cannot overcome the Defendants' assertion of qualified immunity as a defense to her individual capacity claims. [*Id.* at 13–14].

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). To defeat a defense of qualified immunity, a

---

[16] To the extent Plaintiff argues that her retaliation claim survives dismissal because a Library Request Form is not an "official document" under AR 850-07(IV)(A)(4), [#36 at 8], such an argument does not save her claim.  Even if this court agreed with Plaintiff that Defendant Brown's interpretation of AR 850-07 is erroneous (which it does not), such a conclusion would in no way affect the foregoing analysis.

plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004). For purposes of a motion to dismiss based on qualified immunity, the plaintiff's allegations need not "include all the factual allegations necessary to sustain a conclusion that the defendant violated clearly established law." *Robbins*, 519 F.3d at 1249 (internal quotation and citation omitted).

"Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). On a motion to dismiss asserting a qualified immunity defense, the court must determine whether the complaint's factual allegations state a plausible constitutional claim—not whether the complaint contains all the necessary factual allegations to sustain a conclusion that the defendant violated clearly established law. *See Partridge v. Pelle*, No. 17-cv-02941-CMA-STV, 2019 WL 1045840, at *7 n.6 (quoting *Estate of Dixon v. Bd. of Cty. Comm'rs*, No. 15-cv-02727-NYW, 2017 WL 1684134, at *3 (D. Colo. May 3, 2017)).

***Constitutional Violation.*** For the reasons set forth above, this court concludes that the Amended Complaint fails to state a cognizable constitutional claim against any Defendant. That alone warrants the application of qualified immunity. *See Pearson*, 555 U.S. at 236 (holding that a court, within its sound discretion, can consider either prong of the qualified immunity analysis first, and qualified immunity may be appropriate on a failure of either prong). But for the sake of completeness, this court also considers whether Defendants are entitled to qualified immunity from monetary damages as to the second prong, i.e., whether Ms. Burkhart can show that the law was

clearly established at the time of the constitutional violations. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

***Clearly Established Law.*** "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotation and citation omitted). "In applying this test, courts must not define the relevant constitutional right 'at a high level of generality.'" *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017)). "Instead, as the Supreme Court 'explained decades ago, the clearly established law must be 'particularized' to the facts of the case.'" *Id.* (quoting *Pauly*, 137 S. Ct. at 552).

Plaintiff points to no authority, from the Supreme Court, the Tenth Circuit, or otherwise, to support a conclusion that clearly established law would put a reasonable official in Defendants' positions on notice that their conduct in this case—which amounted to the denial of an inmate's access to (a) the law library absent the inmate's inclusion of her commitment name on the request form, and (b) means of communication with her parolee spouse—violated the Constitution. *See Perry*, 892 F.3d at 1127. The absence of authority here "is fatal to Plaintiff['s] claim[s] for monetary damages." *Reinhardt*, 66 F. Supp. 3d at 1250 (citing *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (qualified immunity places the burden on the plaintiff to show that the constitutional right was clearly established at the time of the alleged violation)).

In sum, even if Ms. Burkhart's allegations adequately state a claim (or claims) for violation of her federal constitutional rights, it was not clearly established at the time of the alleged violations that (a) a prison official's denial of an inmate's access to communication with her

parolee spouse violates the First or Fourteenth Amendments, nor (b) a prison official's denial of an inmate's access to the law library absent use of the inmate's commitment name on the requisite form violates the First Amendment. Ms. Burkhart thus cannot overcome the Defendants' assertion of qualified immunity, and Claims II, III, and IV-B fail to state a claim for which relief may be granted.

Accordingly, this court finds that Defendants enjoy qualified immunity from liability for any civil damages, and as a result respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claims for monetary damages.

### D.     State Law Claims

Defendants argue that Plaintiff's state law claims (a) involve novel and complex issues of state law inappropriate for resolution in federal court; and (b) should be dismissed because, upon dismissal of Plaintiff's federal claims, this court should decline to exercise supplemental jurisdiction absent any claims over which it has original jurisdiction. [#33 at 9–11 (citing *VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1150 (10th Cir. 2017) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."))]. Plaintiff does not address Defendants' arguments concerning the exercise of supplemental jurisdiction in either her Response or Supplemental Response. *See generally* [#36, #39].

***Dismissal of all federal law claims.*** Here, absent Plaintiff's federal claims, there is no discernible basis for this court to still exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's state constitutional and statutory claims do not raise any issues implicating federal law and, "if federal claims are dismissed before trial, leaving only issues of state law, the 'federal court should decline the exercise of jurisdiction by dismissing the case without

41

prejudice.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (quoting *Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)).   Courts "generally decline to exercise pendent jurisdiction in such instances because notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.* at 1230. *See also Iwasko v. Santa Fe Community College*, No. CIV 10-1000 RB/KBM, 2011 WL 13284601, at *10 (D.N.M. Sept. 2, 2011) (declining to exercise pendent jurisdiction over the plaintiff's state law claims after dismissing all claims over which it had original jurisdiction).   For the reasons set forth above, this court recommends dismissal of all remaining federal claims in this action.   Accordingly, this court finds it appropriate to respectfully **RECOMMEND** that the presiding judge decline to exercise supplemental jurisdiction over Plaintiff's state law claims, should no federal claims remain, and Claim IV-A be **DISMISSED without prejudice**.[17]

## CONCLUSION

For the reasons set forth above, this court respectfully **RECOMMENDS** that:

(1)   Defendant Brown's Motion for Summary Judgment [#40] be **GRANTED IN PART and DENIED IN PART**; and

(2)   The Defendants' Motion to Dismiss [#33] be **GRANTED**.[18]

---

[17] Defendants argue that Plaintiff's state law claims in this action should be dismissed under 28 U.S.C. § 1367(c)(1) in light of a case currently being litigated in Denver District Court, regardless of whether any federal claims remain. [#33 at 9].  Pursuant to 28 U.S.C. § 1367(c)(1), a federal court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim if the claim raises a novel or complex issue of state law.  Upon review of Defendants' arguments in this regard with respect to Claim IV-A, this court notes that "the fact that an issue has not been decided by a state court, alone, does not make that issue novel," *Arc of Pikes Peak Region v. Nat'l Mentor Holdings, Inc.*, No. 10-cv-01144-REB-BNB, 2011 WL 1047222, at *2 (D. Colo. Mar. 18, 2011), and the simple fact that "certain issues involved in plaintiff's state law claims have been left unresolved by [state] courts does not make those issues novel or complex," *Martin v. Pub. Serv. Co. of Colo.*, No. 20-cv-00076-RBJ, 2020 WL 4193547, at *3 (D. Colo. July 21, 2020) (citation omitted).  This court declines to recommend dismissal of Claim IV-A on this basis.

[18] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and

**IT IS FURTHER ORDERED** that a copy of this Recommendation, marked as legal mail,

be sent to the following:

> David Lee Burkhart
> 1290 King Street
> Denver, CO 90204

DATED:  January 30, 2021          BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).